The next case for argument is number 2011-1028, Craig v. Kenneth Cole. Mr. Schneider, when you're ready. May it please the court. The issue, as we see it in this matter, gets distilled down at this point to one of application of the natural expansion doctrine. The vast majority of the record evidence in this case concerning use of the Latigre mark, now owned by Kenneth Cole, in connection with clothing, did not exist in 1999 when Mr. Craig filed his intent-to-use application, seeking use of a nearly identical mark in connection with small leather goods and writing instruments. In fact, the earliest advertisements in the record showing use of Latigre in connection with clothing didn't show up until well after Mr. Craig filed his application, and in fact, after the start of the opposition. We think the board erred when it considered this post-filing evidence, in fact post-opposition evidence, of use of the Latigre mark. What are we supposed to make out of this Canadian Imperial Bank case, which is cited in the red brief, which I find less than clear in eliminating the Dupont factors as to whether, in a case like this, where you're not talking about identical registrations, whether you look for the use of the goods or not? In the Canadian case, my recollection is you have, in fact, you're right, there are not identical marks there, and in fact, the question was, they looked at competition, and then from the competition, they looked at whether or not bridging the gap even came into play. I mean, they decided that since the goods there were, in fact, competing against each other, there was no... They both covered these bank services in Canadian. In Canadian. I believe that's the case, but that's not the case here. Right, that is not the case here. Here we have a registration. The Latigre registration is for clothing, lines of clothing, related goods. And Mr. Craig's application is specifically for writing instruments and small leather goods. So if there's a distinction to be made, that's where we're looking. Well, that's the question, is whether you can look to the use of the mark or whether you have to give it the full scope in terms of the registration. The Canadian says that if the goods are, if the marks are identical, I mean, if the registrations are identical, that it doesn't make any difference how the mark was used. But it seems to suggest, perhaps, that if the registrations are not identical, then you do have to look to the use of the mark. Well, what we're looking at here is in terms of relatedness of the goods. I'd like to answer your question. The answer isn't coming to me. What we're looking at here is a very specific fact pattern based on the case law that we've looked at, which is where you have identical marks, different lines of goods, the natural expansion doctrine should apply. But the cases that you cite as it relates to the time frame for when you can consider this evidence are all intervening rights priority cases. They have to do with priority, not with respect to how to interpret the uses of the mark, right? That's right. Do you find a distinction there? That is a distinction, but we don't believe it's a distinction with a difference. Why is that? Well, we think because what they're trying, what LaTigre is arguing, is that they are going to expand into these areas, and that there is carryover, and that the goods are, in fact, and the goods will, in fact, are related to one another. That's what the board found, that the goods were related, and that's where they ended, full stop. But it's not whether they're going to expand, but it's whether in the minds of the public they could believe that they expanded. Isn't that the test? That is the test, and you can apply that same test in the context of the Natural Expansion Doctrine. The board has done that before. In the Ametek case, that was exactly the words that they used, are the goods related. But the real question here is when you apply that test, what evidence can you look at? And in a priority context, it makes sense that you look at the evidence as the date of the application, whereas in a case like this, it's very different, and there is a distinction between the two, is there not? We're arguing it, we're arguing application, to your point, we're arguing application of the Priority Doctrine, the Expansion Doctrine in the context, we've argued it in the context of the relatedness of the goods. And to the extent that it also is directly, it is applicable in the priority argument, certainly, that's where it comes from, and that's where we carried it over into the relatedness of the goods. Because we see the similarities are we have a situation of identical marks, different lines of goods, and in that context, would it have been natural for LaTigre, who hadn't used, who hadn't expanded beyond clothing for 30 years, for much of the life of the mark, would it have been natural for them to all of a sudden do so, now that Mr. Craig filed his application? How do you get around the Reynolds case? I don't have an answer to that question. Okay. So I think we've made the other points, but the factors here are, you know, what we think that should have gone on was the Board asked the right questions. I mean, it can ask, are the goods related? And it can do that in the context of the Expansion Doctrine. It can ask whether purchasers would reasonably believe the goods emanate from the same source. It can do that in the context of the Expansion Doctrine and has done it before. So what the Board did... But what you're arguing, as I understand it, is that if their registration covered all clothing, which it did, that you still have to look and see how the mark was used. And if it was used only for, let's say, mid-range goods, that you don't have to worry about the possibility of confusion with respect to high-end goods. That is a, yes, that's what we've just argued extensively in our brief. Right. And they say, no, no, that's not right. Under the Canadian case, that you have to give the mark, the full scope of the mark, and it doesn't make any difference how the mark is actually used with goods. As long as you say there's a possibility of confusion in any area, whether or not we're using the mark in that area, we win. Right. That's the standard that we can see. That is normal analysis and likelihood of confusion analysis. What our contention is, when applying the Expansion Doctrine, especially in this case where you have a mark that never expanded, or I can't say never, did not expand for much of its life, the application of the Expansion Doctrine is appropriate because we have a 1999 ITU application, and then seven years later, still we now have all of a sudden that we're going to expand into this new area, or we're going to oppose your mark for that reason. In our opinion, that was the improper analysis. We need to look at what was appropriate in the trade in 1999. Okay. Good morning. May it please the Court, my name is Kathy Schor-Sorotin, and I represent the appellee opposer, Kenneth Cole. I think the questions that Your Honors have asked are very,  One of the questions that I have is, First of all, counsel said that we were arguing that we were going to expand. While that is one of the issues that was raised, the proper issue is what consumers perceive, as Judge O'Malley stated, and in terms of the relatedness test, even the Amitek case, which was cited by Craig's counsel, says it is sufficient that the products are related in some manner and or sold under conditions that are likely to be encountered by the same person under circumstances that give rise to the mistaken belief that they originate from or in some way associated with the same producer. The point here is what should be looked at is the registration and the goods in the registration and applicants' goods in its application. Do you argue that it is completely irrelevant that the mark had been used only for such limited purposes for so many years? Two things. It's not irrelevant. It's a factor, but first of all, there is some evidence in the record of it being used beyond clothing. There were photographs, for instance, of the mark being used on a tennis bag, and in addition I understand what you're saying, but I think the question is, I thought in your brief you were saying that the use with the goods is irrelevant because you're entitled to the full scope of the mark, and if the mark covers high-end, low-end, mid-range goods, which it does, that that in itself is sufficient. And the question is, is that your argument? Yes. That's not right, is it, in the light of Well, the case law does what we said in Canadian lumber, right? Or Canadian financial, whatever it is. The cases do say, that case being one of them, that you look at the goods in applicants' application as they're delineated and there's no restrictions in that, and you look at the goods in the opposer's registration and there's no restrictions in that. If the two registrations cover the same goods, that's not true here. The registrations don't cover the same goods. One registration covers clothing, the other one covers small leather goods. And if I understand Canadian correctly, the court is saying if it's identical, we just look at the mark. But if the goods are not identical, that is, if the marks cover different goods, then we have to look beyond the scope of the marks and then to look to see whether the mark was actually used with particular goods. No? I think you're talking about if the goods are identical or if the marks are identical. I think there's substantial If the marks are overlapping, then you don't need to look at the use with the goods. But if the marks are not overlapping, you do have to look as to how the mark was used with the goods. Okay. I think that there's sufficient other case law at the TTAB that specifically states that when the marks are the same or virtually the same, that there only needs to be a viable relationship between the goods. And the greater the degree of similarity of the marks, the less of the degree you need a similarity of the goods. In this case, the goods are virtually identical. I'm sorry, the marks are virtually identical, litigra and litigra. My question wasn't directed to the similarity of the marks. You are arguing that because you had a mark that covered all kinds of clothing and determining the likelihood of confusion, we have to look at high-end, low-end, and mid-range goods. And it's irrelevant that you didn't use the mark with the high-end goods in the past. I believe that's correct. I'm saying that seems to me to be questionable in the light of the Canadian case. I respectfully disagree. However, even if what you're saying is the proper interpretation, there is significant evidence in the record that Kenneth Cole's predecessors in interest did use the mark on high-end goods. And it was not until Kenneth Cole acquired the mark that it was sold predominantly through J.C. Penney's. So it was not until 2008 that the evidence shows that the mark was sold in Penney's. Before that, there's evidence in the record that the brand was sold in upscale stores as an upscale brand. Is there a finding on this point by the TTAB? The TTAB did find that it was not uncommon for the same company to use the trademark on clothing and accessories. Yeah, but one of my questions is did they make a finding as to your use or your predecessors' use in the high-end? I need to look and see. I don't recall. But it did find that our testimony was corroborated and uncontroverted and that there was evidence in the record, both testimony and other evidence, that the goods were sold in Bloomingdale's, in Nordstrom's, in Lord & Taylor's, in Macy's, and in Sachs. And I can cite to you the pages. It's A121 through 124. That may be, but I see the TTAB decision as resting on the notion that that's irrelevant. Look at A28. They say that the registrations have no restrictions related to trade channels or classes of purchasers. They seem to think that's the end of the matter, and I'm not sure that's right. On the previous page, they cite Canadian Imperial for the proposition that you only look to the registration and not to the actual use. Well, I believe their finding in that respect is correct, and I think there's substantial case law supporting that point and that the goods do not need to be identical because, again, you're looking to what the public believes. And we have in the record numerous companies that both have registrations for both type of goods. We have actual use evidence where we had the marketing person went shopping, and we presented evidence that these types of goods are sold under the same brand, and then also Internet evidence. And we had, for example, there's evidence in the record that the Paul Smith brand was sold in Bloomingdale's, and there were pencils and there were clothing, both under the same brand. There's Internet shopping evidence of Juicy Couture, where the mark is used on stationery with pens, and then it's also used for dresses and wallets. So consumers are used to seeing the same mark on these various type of goods. In addition, there's no evidence in the record, and the TTAB mentioned this in their opinion, that there's no evidence in the record to show that consumers perceive high, low, medium differently than they do any other spectrum. So to the extent that the appellant tries to argue that you should only look to one particular factor, there's no evidence of that in the record that there's any basis for that distinction. Do you want to address his natural zone of expansion test since that issue, because that was the primary issue that he raised? Yes. Mr. Craig terms the case law in its current form,  that the TTAB must apply the doctrine of natural expansion. As you aptly pointed out, Your Honor, the doctrine is applied in the context of priority. None of the cases that are cited by Mr. Craig are used in this type of situation. Not only is it normally used in the case of priority, but it's asserted normally by the opposer when there's an intervening use. Here, not only is there not an intervening use, we're looking at an intent to use application. So there is no junior user, because the junior mark is not in use. The doctrine looks hypothetically back in time to see what the situation would have been. In addition, Professor McCarthy has specifically stated that the theory of natural expansion appears to be no more than a specific application of the familiar related goods test. And it seems to be an unnecessarily complicated application applied to a specific situation. In this case, the board properly looked at all the evidence before it and didn't limit the evidence to 1999, which was when Mr. Craig's application was filed. The only reason that Mr. Craig is asserting this particular doctrine is to make the board or the court look only to evidence to 1999, and that's just improper. Very well, thank you, Ms. Schwartz. Thank you. Mr. Schneider, would you like to have a couple of minutes for rebuttal? Just very briefly, Your Honor. There is testimony from Ms. Selig in the record that there is definite plans for expansion into other lines of goods. And in fact, I believe there's testimony in the record of additional applications being filed by Kenneth Cole. So there is certainly plans for expansion. And then as for, we bring up the test again of, do the goods emanate from the same source? Do the public, and the relatedness of the goods, in both those questions can again be asked in the expansion doctrine scenario. That's all I have. Thank you. I thank both counsel. The case is submitted.